First Judicial District Court of Union County.

K. G. O. CONSTRUCTION COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF, v. GEORGE W. KING, Jr., DEFENDANT.

Decided February 23, 1934.

For the plaintiff, *John J. Stamler.*

For the defendant, *C. Addison Swift.*

La Corte, J.   This is an action by the plaintiff (landlord) against the defendant (tenant) for non-payment of rent alleged to be due it for an apartment rented to the defendant by the plaintiff under a lease.   The defendant claims he owes nothing because he was forced to vacate his apartment before the lease expired on account of the schreechiness and the annoying loquacity of a parrot owned and kept by another tenant adjoining his apartment which disturbed the peace and quiet of his home life.   It is further contended by the defendant that a clause in the lease executed between the parties hereto forbidding the habitat of domesticated animals in the apartment house in question was for the benefit of the tenant, and that it became and was the duty of the landlord to cause the said tenant to vacate or to forfeit said tenant's lease or to compel him to get rid of or in some way suppress the cause of the annoyance to the quiet enjoyment of the defendant's home.

Eminent counsel on both sides pleaded their case very well and the Honorable C. Addison Swift, attorney for the defendant, contended on the one hand that the parrot was such a domesticated animal as was described in the lease and that failure on the part of the landlord to get rid of it by causing its owner either to vacate, or to get rid of same, constituted not only a breach of the lease, but that its failure to

act constituted a constructive eviction of the defendant, and therefore defendant was not liable for the payment of rent for the unexpired term under the lease  Mr. John J. Stamler, attorney for the plaintiff landlord, contended that the parrot in question was a *bird* and not a domesticated animal, and that the acts of the bird or of the tenant next door who owned the bird could not and should not deprive the landlord of the rent justly due it for the unexpired term of the lease.  The apartment house in question contained about twenty families.

The matter coming on to be heard before the court, sitting in the dual capacity of judge and jury, and after listening to the testimony presented on both sides by learned counsel, the court finds as follows:

"At first blush," as the poet Pope might say, this is a case that could be appropriately designated in the language of our immortal Shakespeare, "much ado about nothing," but the earnestness of counsel, and the parrot's continual interference with the processes of thought on the part of some or most of defendant's guests while playing at that delightful pastime—contract bridge—plus the fact that the constant schreechiness of the parrot might entail a loss of money to either party, have constrained the court to give it an unusual amount of attention.

The court took great pains to delve into the legal tomes of this state for the purpose of discovering the exact legal or judicial status of a parrot.  It failed to find any judicial or legal status for a parrot—the so-called "cause" of the trouble in the case.  And in order to prevent some other judge from growing pale while ransacking our court decisions from its very beginning to the present time, this court doth now hereby solemnly declare that a parrot is a domesticated animal.

The court doth further find that the parrot in question was very schreechy, querulous, and extremely loquacious though not given (*mirabile dictu!*) to indulging in profane or indecent language.  This virtue was graciously, and generously accorded the parrot by the uncontradicted testimony of the defendant and all his witnesses.  The parrot, in this regard, had been well trained.  Its foster parents had given much time, effort and thought to its proper bringing up. In their zealousness to make the parrot the talkative member

of the family, they had forgotten in their education of him to teach him some of the nicer requisites of our present-day social customs.

In this day and age it is not good manners for a bystander or onlooker to interrupt or interfere in a card game, particularly so if it is contract bridge. And to speak much above a whisper is not to be tolerated from anyone much less from an animal who has had heretofore no judicial or legal status.

The court finds that the parrot was ill-mannered, in disrupting the train of thought of the card players, and that when the parrot attempted continuously to speak above the voices of the players themselves, he brought himself within the realm of judicial censure.

The court cannot refrain from judicially reprimanding the foster parents of the parrot for neglecting to teach the parrot when and when not to speak, or when and when not to inject his inharmonious, raucous, and monosyllabic words upon the unlistening ears of pensive, and serious-minded card players. This penchant to break up card games on the part of this particular parrot or on the part of social parrots in general is judicially frowned upon. The court finds the conduct of the parrot and of its foster parents in this case was grossly indiscreet and eminently anti-social.

The court regrets very much that these facts, important as they may seem to be, are not sufficient in law to render a verdict for the defendant, but finds itself constrained by the laws of this state to find for the plaintiff on the ground that the landlord is not responsible for the acts of a third party tenant.

The court further finds that the clause in the lease forbidding the habitat of domesticated animals in the apartment house by any tenant under pain of forfeiture of the lease was put in the lease by the landlord, and was for his own particular benefit, and certainly not for the benefit of the defendant (tenant) in this suit, nor for the other tenants who might have occupied the apartment house in question at the time complained of.

The court finds, therefore, that there is due the plaintiff, K. G. O. Construction Company, from the defendant, George W. King, Jr., the sum of $130 and costs.